UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GRACE KALISZUK,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 06-203-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 3, 2006, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 21, 2006, and March 22, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 15, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on September 5, 1953. [Administrative Record ("AR") at 65.] She has a twelfth grade education. [AR at 78.] Plaintiff previously worked as a bank manager, companion, and customer service representative. [AR at 20, 90-92, 392-94.]

On September 18, 2003, plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been unable to work since May 10, 2001, due to arthritis, anxiety, depression, blurry vision, dizzy spells, and back pain.[1] [AR at 14, 65-67, 71-72, 367.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on June 6, 2005, at which plaintiff appeared with counsel and testified on her own behalf. A vocational expert ("VE") and two medical experts also testified. [AR at 368-97.] On November 23, 2005, the ALJ determined that plaintiff was not disabled because she can perform light work with certain restrictions.[2] [AR at 11-22.] When the Appeals Council denied review on February 1, 2006, the ALJ's decision became the final decision of the Commissioner. [AR at 6-8.]

/

/

/

---

[1] The Court notes that in the "Disability Report" signed by plaintiff on September 17, 2003, plaintiff indicated that she became unable to work on July 10, 2001. [AR at 72.]

[2] Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ also determined that plaintiff was capable of standing and walking for six hours in an eight hour work day, sitting without limitation, occasionally engaging in postural activities, and occasionally using foot controls. The ALJ precluded plaintiff from using ropes, ladders, and scaffolds, from engaging in dangerous occupations, and from working around dangerous machinery. With respect to plaintiff's mental capabilities, the ALJ determined that she may engage in moderately complex tasks in a "habituated" setting, but is precluded from "emotionally charged" public contact. The ALJ also noted that plaintiff has mild limitations in activities of daily living and in concentration, persistence and pace, and that she has mild to moderate limitations in social functioning without evidence of decompensation. [AR at 17.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has the sufficient "residual functional capacity"[3] to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity during the relevant time period. [AR at 15, 21.] At step two, the ALJ concluded that plaintiff has the severe impairments of arthritis of the knees and low back, osteoporotic changes of the right shoulder, and alcohol induced affective disorder (not otherwise specified). [AR at 15.] At step three, the ALJ found that the impairments do not meet or equal any impairments in the Listings.

---

[3] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

[AR at 16, 21.] The ALJ further determined that plaintiff retains the residual functional capacity to perform light work with certain restrictions. [AR at 17.] At step four, the ALJ concluded that plaintiff is unable to perform her past relevant work. [AR at 20-21.] At step five, the ALJ concluded that there are a significant number of jobs in the local and national economies that she can perform. [AR at 20-22.] Accordingly, the ALJ found plaintiff not disabled. [AR at 21-22.]

## V.

## THE ALJ'S DECISION

Plaintiff raises the following contentions: (1) the ALJ failed to appropriately assess a clinical assessment prepared by a treating psychologist; (2) the ALJ failed to properly assess the findings of a State Agency physician; and (3) the Commissioner failed to sustain her burden of establishing that plaintiff can successfully perform other work in the national and local economies. Joint Stipulation ("Joint Stip.") at 2. For the reasons discussed below, the Court agrees that the ALJ erred in his consideration of certain evidence relating to plaintiff's mental capabilities, and determines that remand of this matter is appropriate.

A.  **MEDICAL EVIDENCE REGARDING PLAINTIFF'S MENTAL STATE**

According to the record, plaintiff underwent a comprehensive psychiatric evaluation on December 8, 2003, that was conducted by consultative psychiatrist Dr. Linda Smith. [AR at 274-81.] After conducting a mental status exam, Dr. Smith diagnosed plaintiff with the following: alcohol abuse (possibly abstaining), panic disorder (mild), and depressive disorder (not otherwise specified). [AR at 279.] Dr. Smith assessed plaintiff's Global Assessment of Functioning [4] score

---

[4] A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th ed. 2000).

at 61.[5] Dr. Smith set forth the following functional assessment: plaintiff is mildly impaired in performing simple tasks; mildly to moderately impaired in performing complex tasks; mildly impaired in her ability to interact appropriately in the workplace; mildly impaired in her ability to comply with job rules such as safety and attendance; mildly impaired in her ability to respond to change in a normal workplace setting; and mildly impaired in her ability to maintain persistence and pace. [AR at 280.]

The record also contains a mental residual functional capacity assessment completed by non-examining State Agency physician, Dr. Kenneth Michael, on December 23, 2003. [AR at 292-95.] According to the assessment, Dr. Michael found that plaintiff experiences moderate limitations with respect to the following: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing at a consistent pace without an unreasonable number and length of rest periods; and in responding appropriately to changes in the work setting. [AR at 292-93.] On the same date, Dr. Michael also prepared a "Psychiatric Review Technique" ("PRT") form. [AR at 296-309.] In the PRT form, Dr. Michael set forth that plaintiff has depression (not otherwise specified), a mild panic disorder, and a history of alcohol abuse (current status not known). [AR at 299, 301, 304.] According to the PRT form, Dr. Michael concluded that plaintiff has mild limitations with respect to activities of daily living; mild limitations with respect to maintaining social functioning; and moderate limitations with respect to maintaining concentration, persistence, or pace. [AR at 306.]

The record also contains numerous clinical notes reflecting plaintiff's mental health treatment. For example, plaintiff was treated at St. Bernardine Medical Center on December 14, 2002, after she ingested alcohol and a prescription drug. [AR at 208-10.] At that time, the treating physician, Dr. Brooks, diagnosed plaintiff with an alcohol induced mood disorder, and assessed

---

[5] A GAF score in the range of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV, at 34.

her GAF score at 50.[6] In May 2003, plaintiff sought treatment at the San Bernardino County Department of Behavioral Health, and was diagnosed with an anxiety disorder (not otherwise specified) and alcohol abuse. Her GAF score at that time was 45. [See AR at 156.] In August 2003, plaintiff was again treated at the St. Bernardine Medical Center after overdosing on her medications. [AR at 180-81.] The treating physician diagnosed her with schizoaffective disorder (bipolar type) and determined that her GAF score was 30.[7]

On October 15, 2004, plaintiff was examined by treating psychologist, Jon Held, Psy.D, at the San Bernardino County Department of Behavioral Health. [AR at 342-44.] In his clinical assessment, Dr. Held indicated that plaintiff has difficulties with short term memory, is distracted, and experiences paranoid ideations. [AR at 344.] He diagnosed plaintiff with major depressive disorder, recurrent and severe with psychotic features, and alcohol dependence in early full remission, and gave her a GAF score of 44. [AR at 357.] Around a month later, on November 12, 2004, Dr. Imelda Alfonso diagnosed plaintiff with bipolar disorder (not otherwise specified) and alcohol dependence in early fully remission. Dr. Alfonso also indicated that plaintiff's GAF was 44. [AR at 357.] The record also shows that on January 24, 2005, treating physician Dr. Bruce Bogost completed a "Work Capacity Evaluation (Mental)" form for plaintiff in which he indicated that plaintiff suffers from a variety of marked and extreme limitations with respect to her mental abilities. [AR at 365-66.]

## B.    THE ADMINISTRATIVE HEARING

At the June 6, 2005, hearing the ALJ questioned a psychology expert, Dr. Joseph Malancharuvil, regarding plaintiff's psychological condition. Dr. Malancharuvil testified that plaintiff has an affective disorder, not otherwise specified, and concluded that she is mildly to moderately

---

[6] A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. See DSM-IV, at 34.

[7] A GAF score in the range of 21-30 indicates a serious impairment in communication or judgment or the inability to function in almost all areas. DSM-IV, at 34.

limited with respect to social functioning and should be restricted to "moderately complex" tasks. [AR at 379-80.]

The ALJ also questioned the VE at the hearing regarding available jobs for an individual with plaintiff's limitations. In eliciting this information, the ALJ posed a hypothetical to the VE that included the following mental restrictions: capable of performing moderately complex tasks, but no intense interaction with the general public. [AR at 394-95.] The VE responded that with these particular restrictions, an individual would be able to perform light level, unskilled work, which included positions such as a mail clerk, counter clerk, and bench assembler. [AR at 395.]

**C.     THE ALJ'S CONCLUSIONS**

From the above medical evidence, the ALJ concluded that plaintiff has an alcohol induced affective disorder, not otherwise specified. [AR at 15.] In reaching this conclusion, the ALJ noted the numerous mental diagnoses assessed by various sources, as well as the fact that Dr. Bogost opined that plaintiff's symptoms are listing level, while the examining consultative psychiatrist opined that her symptoms are only mild, and "[o]ther sources" opined that her symptoms were mild to moderate. The ALJ stated: "Because there is absolutely no consensus as to the true genus of her symptoms and because no source who treated the claimant for any period of time subscribed to any particular diagnosis over time, I relied heavily on the opinions of Dr. Malancharuvil, the psychology expert, in determining the nature of the claimant's psychiatric symptoms. ... I also note that Dr. Malancharuvil agrees, in large part, with the opinions of the examining psychiatric consultant." [AR at 16.]

The ALJ went on to determine plaintiff's mental RFC as follows: she can engage in moderately complex tasks in a "habituated" setting, but is precluded from "emotionally charged" public contact. The ALJ also found that plaintiff has mild limitations in activities of daily living and concentration, persistence and pace, and mild to moderate limitations in social functioning without evidence of decompensation. [AR at 17.] In making this determination, the ALJ relied on the testimony of Dr. Malancharuvil, which he found to be "well supported" by the record. The ALJ stated that he accepted the medical expert's opinion over that of the State Agency consultant

"because [Malancharuvil's opinion is] somewhat more favorable to the claimant and because I afforded her the full benefit of the doubt in his regard." [AR at 17.] The ALJ expressly rejected the opinions of Dr. Bogost, finding that they "lack basic indicia of reliability." [Id.]

Plaintiff contends, inter alia, that the ALJ erred by failing to properly consider the opinion of State Agency physician Dr. Michael.

Social Security Ruling 96-6p[8] requires that an explanation of the weight given to the opinions of state agency consultants be included in the ALJ's final decision. See Social Security Ruling 96-6p, 1996 WL 374180. In the decision, the ALJ characterized Dr. Malancharuvil's opinion as being "somewhat more favorable" to plaintiff than the State Agency physician. As set forth above, however, Dr. Michael concluded that plaintiff has moderate limitations in understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing at a consistent pace without the need for an unreasonable number of rest periods; and responding appropriately to changes in the work setting. In contrast, Dr. Malancharuvil concluded that she is mildly to moderately limited with respect to social functioning, and while he restricted her to "moderately complex tasks," he made no specific mention of any limitations involving attention span and concentration, performing at a consistent pace, or responding to changes in the work setting.

By ignoring the moderate limitations set forth by Dr. Michael in his assessment, it appears that the ALJ in effect rejected that portion of the State Agency physician's opinion. It follows, therefore, that the ALJ did not provide any reasons for the rejection. See Social Security Ruling 96-6p, 1996 WL 374180 (ALJ "may not ignore these opinions [made by state agency physicians] and must explain the weight given to the opinions in their decisions"); see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason [citation omitted], an explanation from the ALJ of the reason why

---

[8] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

9

probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."). The ALJ is not permitted to selectively choose from an opinion to support the RFC determination, while ignoring the remaining critical findings. See, e.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore competent evidence in the record in order to justify his conclusion).

Remand is therefore in order. If plaintiff is, in fact, limited as indicated in Dr. Michael's assessment, the ALJ should determine the impact of these restrictions.[9] If the ALJ ultimately rejects the limitations set forth by the State Agency physician, the rejection must be premised on legally sufficient reasons.

Plaintiff also raises the contention that the ALJ failed to properly consider the opinion of treating psychologist Jon Held, who opined that plaintiff has a major depressive disorder and has difficulties with short term memory, is distracted, and experiences paranoid ideations. [See AR at 344, 357.] In the hearing decision, the ALJ did not expressly address Dr. Held's conclusions.

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830. As a general rule, more weight should be given to the opinion of a treating physician than to the opinions of doctors who do not treat the plaintiff. Lester, 81 F.3d at 830; see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) ("because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians.").

---

[9] At the hearing, the VE was asked about the employment possibilities for an individual limited to "moderately complex" tasks without "intense interaction" with the general public. [AR at 395.] No hypotheticals were posed that included the moderate limitations assessed by Dr. Michael regarding attention and concentration, performing at a consistent pace, and responding to changes in the work setting. If, upon remand, the ALJ concludes that plaintiff is moderately limited as such, the hypothetical should accurately reflect those limitations.

"However, an ALJ need not give controlling weight to the opinion of a treating physician." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004). The treating physician's opinion "is not ... necessarily conclusive as to ... the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson, 359 F.3d at 1195 (quoting Magallanes, 881 F.2d at 751). Where the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). When the treating physician's opinion is not uncontroverted, the ALJ may reject it by setting forth specific and legitimate reasons for doing so which are based on substantial evidence in the record. Smolen, 80 F.3d at 1285.

It appears that Dr. Held's conclusions are not inconsistent with the moderate limitations assessed by Dr. Michael. Accordingly, upon remand, the ALJ is directed to evaluate Dr. Held's opinion and determine whether, if credited, it supports a more restrictive mental RFC.

Because the result of this determination may impact other steps of the sequential analysis, plaintiff's remaining issue will not be addressed at this time.

## VI.
## REMAND IS APPROPRIATE

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to evaluate the assessment prepared by Dr. Michael and indicate whether the specific limitations found by Dr. Michael are accepted or rejected, and to consider the opinion of treating psychologist Jon Held. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;
/
/

1  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant
2  for further proceedings consistent with this Memorandum Opinion.
3      **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the
4  Judgment herein on all parties or their counsel.

6  DATED: January 31, 2007                          /S/
                                                     PAUL L. ABRAMS
                                 UNITED STATES MAGISTRATE JUDGE